W. G. BOUTELL and Carl A. Miler, Plaintiffs-Appellants,

v.

Warren VOLK and Wilson-Volk, Inc., Defendants-Appellees.

No. 624–70.

United States Court of Appeals, Tenth Circuit.

Oct. 22, 1971.

James R. Head, Tulsa, Okl., for plaintiffs-appellants.

**674**

John H. O. Clarke, Washington, D. C. (John A. Cochran, Tulsa, Okl., on the brief), for defendants-appellees.

Before LEWIS, Chief Judge, and HILL and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This appeal, by the plaintiff in the district court, involves a patent infringement action pertaining to Claim 6 of U.S. Patent No. 2,674,957, which was issued April 13, 1954. It pertains to the combination of front and rear wheel axle assemblies on a roller coaster type of amusement car which are designed so as to insure that the car will remain on the track at relatively high speeds while executing sharp substantially banked curves.

Defendant-Appellees counter-claimed seeking a declaratory judgment of patent invalidity and noninfringement.

The trial court adjudged the patent invalid under the "obviousness" rule codified in 35 U.S.C. § 103 [1] but said that if the patent were valid it would be infringed.

Two questions are presented:

*First*, whether a prior proceeding in which there was a consent judgment of validity is to be considered binding so as to estop defendant from claiming invalidity.

*Second*, whether the trial court's holding that Claim 6 [2] of the patent was obvious under § 103, *supra* was clearly erroneous. We have concluded that both issues must be resolved unfavorably to the appellants and accordingly we affirm.

I

The prior action mentioned above was filed in the U. S. District Court for the Eastern District of Wisconsin. The suit was instituted by Boutell, who is the plaintiff, against Miler, the inventor, who also appears in this action. The action sought a declaratory judgment holding the patent invalid. The defendant, Volk, was then employed by Boutell and retained an attorney for Boutell. Miler and Boutell settled this Wisconsin case. It is this stipulated judgment which Miler and Boutell now claim to be binding on Volk to the extent that he is estopped to question the validity of the patent. They maintain that this result follows logically from the recent decision of the Supreme Court in Blonder-Tongue Laboratories, Inc v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

1. 35 U.S.C. § 103: A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

2. Claim 6: "The combination in an amusement device * * * of a passenger carrying means, supported at the rear end by a truck, said truck comprised of a horizontal axle having fixed at a point between its ends a rotatable upright pivot shaft attached to the underside of said passenger carrying means, a beam rotatably attached at a point between its ends to each end of said axle in a transverse position in relation to the longitudinal axis of said axle and rotatable about the longitudinal axis of said axle, each end of each beam having a wheel means capable of taking a thrust load and a radial load on an underlying track rail; the front end of said passenger carrying means supported by a truck comprised of a horizontal axle having fixed at a point between its ends a horizontal and rotatable pivot shaft in a transverse position to the longitudinal axis of said axle, a yoke fixed to said horizontal pivot shaft and having an upright pivot shaft rotatably attached to the front of said passenger carrying means, a beam rotatably attached at a point between its ends to each end of said axle in a transverse position in relation to the longitudinal axis of said axle and rotatable about the axis of said axle, each end of each beam having a wheel means capable of taking a thrust load and a radial load on an underlying track rail."

It is to be gleaned from the testimony that the device in question seeks to achieve a measure of flexibility allowing the amusement car to take sharp turns and dips and not separate from the tracks and at the same time to have a modicum of stability in the individual axle assemblies. Miler and his licensee, Boutell, contend that the apparatus which is revealed by Claim 6 is a combination which is unique in achieving the mentioned goals more efficiently than any other similar equipment which had been known to the art at the time of the granting of the patent.

Under the Miler patent the amusement car is supported by two so-called trucks which are axle assemblies, each being composed of four horizontal and four vertical wheels supported by an axle. One of the trucks is located in the front and one in the rear. The difference between these is that the front allows more varied motion than does the rear.

On both trucks the wheels are set out in two pairs on each side of the vehicle. One pair is horizontally oriented, the other vertically, the two pairs being set at right angles to each other and spaced so that the track rail is effectively "entrapped" into contact with all four wheels at all times, with the vertical wheels on each side being on the inside of their respective tracks. The four wheels are themselves set into a holding plate which is pivoted around the axle, with one vertical and one horizontal wheel on each side of the pivot; thus, the set of wheels can rock in a vertical direction with the axle as center, much in the manner of a teeter-totter; they are capable of rocking vertically from front to back and from back to front on their axis located at each terminus of the axle.

On neither truck can each set of four wheels pivot horizontally independently of the other set. However, on both trucks, the axle at its attachment to the car body is allowed to move in a horizontal plane. Thus, while the front end of the car is turning, the car body can turn even though the rear axle has not yet turned; the car body can be in a constantly changing alignment with respect to the horizontal direction of the axles, and the axles may be independently directed to follow very sharp curves in the horiztonal plane.

The final motion allowed by the patented combination applies only to the front axle assembly. That assembly is mounted to the horizontal attachment to the car's body by means of a metal piece indeterminately described in the patent as a "yoke." This yoke is in essence an inverted "U"-shaped unit, the top of which is attached to the bottom of the amusement car in such a way as to allow the entire unit to rotate in a horizontal plane. From this mounting, two flanges descend in the "U" shape mentioned above, and the axle is joined at its mid-point to the yoke by means of a pin passing through the bottom of these flanges, the axle thus riding between the "U" shaped faces. The yoke assembly can thus move horizontally, and the axle assembly can pivot vertically inside the yoke upon the pin which goes through the arms of the inverted "U" holding it to the yoke; thus, the axle—yoke in the front axle assembly is capable itself of both vertical and horizontal rocking, in addition to the vertical rocking allowed the wheel assembly as described above. The inventor apparently felt that the rear assembly needed only the horizontal movement capability described earlier in order to assure sufficient overall stability to the car. Both the front and rear axle mounts are made at a point along the middle of the underside of the amusement car.

## II

In the course of ruling that the patent was invalid as obvious to a person having ordinary skill in the art, the trial court found that

"13. The feature of the claimed invention which plaintiff claims to be new and an advancement over the prior art was the addition of a yoke to the vertical pivot which permits the front axle to turn not only in a hori-

zontal plane but also to rock transversely with respect to the car body and which in combination with the centrally pivoted rear axle permits the cars to negotiate sharp and banked curves."

and further found

"15. The prior art also is represented by a patent dated in 1931 to Schmeck, No. 1,839,054, which is concerned with the mounting of one of the axles of a car so that it is free to rock transversely with respect to the car body while the other axle is prevented from rocking, thus allowing Schmeck to retain all of the car wheels on the tracks as it negotiated banked curves."

The court concluded that a man skilled in the art and having Disbrow's[3] and Miler's own prior art before him could have solved the problem of keeping the car on the track by merely viewing the prior art.[4]

It was noted by the trial court that Miler had for more than two years prior to the filing of his application for the patent in suit publicly used a device which embodied rotatable axles and vertical pivoting and rocking wheels so that the addition was simply the yoke which permitted transverse rocking of the en-

tire front assembly as the car negotiated steep or sharp banks and curves.

Section 103, *supra*, codifies a principle which has been recognized for a long time. See Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683 (1851), wherein it was pointed out that the simple substitution of one material for another in an otherwise identical device did not justify the issuance of a patent.[5] The court stressed that the improvement must be the work of an inventor rather than that of a skilled mechanic.

In the relatively recent decision of the Supreme Court in Graham v. John Deere Company of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the scope and nature of judicial inquiry pursuant to § 103 was outlined.

In essence it was declared:

1. The scope and extent of the prior art must be determined.

2. Differences between the prior art and the claims at issue are to be ascertained.

3. The level of ordinary skill in the pertinent art resolved.

▪ Obviousness and non-obviousness of the subject matter is determined against this background.

In line with the *Graham* case this court has also had occasion to consider

---

3. The Disbrow patent is No. 9,068, issued in 1852. Like the patent in suit, the Schmeck and Disbrow patents were designed to allow cars to stay on the tracks while negotiating curves. The means used were different, but the flexibility of axle movement was similar.

4. Specifically the court said:
   "6. A man skilled in the art of coaster rides having the Disbrow patent or Miler's own prior art car before him and faced with the problem of maintaining all of the wheels of the car on the tracks while the car negotiates abrupt, steeply banked curves would have found in the prior art, as typified by the patent to Schmeck No. 1,839,054 the key requirement for solving the problem.
   "7. The patentee has not produced any unusual or surprising consequences from the combination or unification of these old known mechanical elements,

and the patent does not possess any patentable improvements over the prior art.
   "8. The difference between the subject matter of the invention and the prior art was such that the subject matter as a whole was obvious at the time of the invention to a person having ordinary skill in the art."

5. [U]nless more ingenuity and skill in applying the old method of fastening the shank and the knob were required in the application of it to the clay or porcelain knob than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of the skillful mechanic, not that of the inventor. 13 L.Ed. at 691.

the correct procedure and the standard of review in a § 103 case. Scaramucci v. Dresser Industries, Inc., 427 F.2d 1309 (10th Cir. 1970); Eimco Corp. v. Peterson Filters and Engineering Co., 406 F.2d 431 (10th Cir. 1968); *See also* Stevenson v. Diebold, 422 F.2d 1228 (9th Cir. 1970); Shaw v. E. B. & A. C. Whiting Co., 417 F.2d 1097 (2nd Cir. 1969). In *Scaramucci* the court said:

> To be invention, an improvement in the prior art must involve more ingenuity and skill than the work of an ordinary mechanic in the art. 427 F.2d at 1317.

And in *Eimco* the court held that the question of obviousness or non-obviousness is one of fact for the trial court which is not to be set aside in the absence of clear error.

The record herein reflects that the trial court very carefully considered all aspects of this present problem. Also, defendants called an expert on patents and patent law who testified that neither the Disbrow nor Schmeck patents were referred to in the Patent Examiner's report on the Miler patent. He testified that Disbrow contained the essentials of the Miler patent except the yoke and that Schmeck taught substantially the same thing as the yoke. On this latter aspect he said:

> "Schmeck involves an amusement car where at one end there is a transverse pin * * * which extends between elements 13 and 14, that correspond to the yoke in the patent in question, and by this means the transverse axle member is rockably mounted, about what would be to the longitudinal axis, so you would get this movement as you would be shown in the car I have in my hand.

> \*   \*   \*   \*   \*   \*

> "The question then from a patent standpoint is whether a man skilled in the art, having Schmeck in front of him and having other art of this type there showing that sort of rocking motion, the question, would it be obvious to him to combine these two, whether there would be any new and unexpect-

ed result by taking Schmeck's rocking pivot arrangement and placing it in the Miler patent; and my conclusion was that it was very definitely obvious." (Record, pp. 80–81.)

It may be more accurate to say that the Schmeck patent did not reveal use of the yoke but that it taught a function substantially the same as that taught by the yoke. Be that as it may, the fact is that the yoke is the crucial factor—that it distinguished the device from Miler's own prior mechanism. The court did focus adequately on the obviousness or non-obviousness of the yoke as an instrument for accomplishing the desired movements, and we cannot say that the judge's conclusion that it was obvious to a person having ordinary skill in the art was clearly erroneous.

Nor are we impressed with the contention of appellant that the trial court misapprehended the scope and significance of the improvement. Judging from the testimony and the comments of the court during the trial, together with the findings and conclusions, we are persuaded that the court fully understood it.

In our judgment then the decision of the trial court invalidating the patent was not clearly erroneous and is not subject to reversal.

### III

The remaining matter to consider is the contention of Boutell that Volk is now estopped to question the validity of the Miler patent in view of the Wisconsin litigation, Boutell v. Miler, 67–C–259 (D.C.E.D.Wis.), wherein the patent was ruled valid following a settlement in which Boutell was given a license and a consent judgment of validity was entered. Appellant would have us apply Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Appellant does not argue that Volk was a participant in the Wisconsin case whereby he is on this account precluded from again litigating, for it is obvious that Volk was not a party di-

rectly or indirectly in the Wisconsin litigation. Instead, he contends that *Blonder-Tongue* has eliminated all need for privity in a patent case.[6] This is a grossly inaccurate appraisal.

The *Blonder-Tongue* opinion reviewed with great care the mutuality requirement as it had existed under the 1936 decision in Triplett v. Lowell, 297 U.S. 638, 642, 56 S.Ct. 645, 80 L.Ed. 949 (1936). *Triplett* had conditioned the plea of res judicata on there being total mutuality as to the parties. Thus, all parties involved had to have been actual parties or privy to actual parties in order for estoppel by judgment to come into play. The result was that a patentee whose patent had been held invalid in one court was free to pursue infringement suits in other districts in a quest for a judgment of validity. *Blonder-Tongue* in some degree stopped this multiplicity of actions in various districts and circuits by simply holding that adjudication of *invalidity* of a patent following a full and fair hearing in which the defender of the patent had an adequate opportunity to present his case in support of validity would be final. The patentee against whom the judgment has been entered is barred from asserting in another action that the patent is valid.

Neither the actual decision of the Supreme Court nor the language of the opinion suggests that the mutuality requirement is relaxed as to a new infringer following an adjudication of validity. To so hold would deprive the alleged infringer of a trial. Thus, the obvious distinction is that it is not inequitable to relax mutuality in a situation in which the patentee has fired his best shot, so to speak, and has missed. On the other hand, it is grossly inequitable to bind a party to a judgment of *validity* rendered in an action against some other party.[7]

The Supreme Court also made clear that the decision was not dictated by judicial administration considerations, but rather the justice and equity of permitting a patentee to shop interminably for a district in which he can secure a favorable adjudication. In any event, there is nothing in the very careful opinion of Mr. Justice White which in any way intimates that the patentee is free to obtain a judgment of validity and thrust it upon non-participating parties in other litigation. To do so would be contrary to the very matters which were weighed and considered in arriving at the final conclusion in *Blonder-Tongue*.

Moreover, there are no underlying policy considerations which would justify the interpretation which is advanced by the appellant here, for although the holder of a valid patent is entitled to all of the limited monopoly rights granted by law, there is no policy which favors the extending of his monopoly beyond the legal borders which have been established. In summary, then, we see no support in *Blonder-Tongue* for plaintiff's interpretation, and we therefore conclude that the district court was entirely correct in refusing in these conditions to give effect to the Wisconsin judgment.[8]

The judgment is affirmed.

6. Appellants' brief explains *Blonder-Tongue* as:
   The requirement of mutuality being overruled in patent cases to reduce crowded dockets.

7. The Supreme Court cited with approval the opinion of Justice Traynor in Bernhard v. Bank of America Natl. Trust & Savings Assn., 19 Cal.2d 807, 122 P.2d 892 (1942), which laid down as one of the standards for determining the validity of a plea of res judicata whether the party *against* whom the plea is asserted is a party or in privity with the party to the prior adjudication (paraphrase). See also Bruszewski v. United States War Shipping Administration, 181 F.2d 419, 421 (3rd Cir. 1950), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950).

8. The conclusion which is here reached renders it unnecessary to examine the Wisconsin proceedings and to determine whether the judgment rendered was a truly adversary one or was a consent judgment following an agreement because this aspect is not relevant.