**A. E. STALEY MANUFACTURING COMPANY, Plaintiff-Appellant,**

v.

**HARVEST BRAND, INC., Defendant-Appellee.**

**No. 71–1049.**

United States Court of Appeals, Tenth Circuit.

Dec. 2, 1971.

Rehearing Denied Feb. 4, 1972.

Pickett, Circuit Judge, dissented and filed opinion.

John W. Hofeldt, Chicago, Ill., for appellant.

Edmund C. Rogers and John M. Howell, Clayton, Mo., for appellee.

Before PICKETT, HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

This is a patent infringement suit brought by the A. E. Staley Manufacturing Company against Harvest Brand, Incorporated, alleging an infringement of Staley's patent No. 3,246,336 which Staley has owned since it was issued on

April 12, 1966. The patent application was filed on April 8, 1963.

Staley's patent describes a cattle feed block which combines dehydrated molasses, liquid molasses as a wet binder, significant amounts of salt, and some type of mineral oil or edible fat. The resulting product is a highly palatable feed block for cattle or sheep from which they will eat a surprisingly consistent amount each day. Two novel benefits are derived from this regulated consumption. First, although molasses is very beneficial to cattle, too large an intake can cause scouring or diarrhea. This problem has been eliminated in the Staley patent block. Second, because cattle like the taste of molasses, unpalatable medicines can be added to the Staley block and cattle will consume them in a controlled amount. The Staley patent feed block thus accomplished two new and novel results.

The lower court found that the patent was infringed but that it was not valid. The Court found that the patent had utility but that it did not have novelty as required by 35 U.S.C. § 102 and that it was not nonobvious as required by 35 U.S.C. § 103. From this decision Staley appeals.

■ The lower court made no findings of fact which would negate the claim of novelty. Novelty can be disproved by showing anticipation or aggregation. McCullough Tool Company v. Well Surveys, Inc., 343 F.2d 381 (10th Cir. 1965), cert. denied 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966). This court said in Griswold v. Oil Capital Valve Co., 375 F.2d 532 (10th Cir. 1966) at 537 that:

> "The doctrine of anticipation by patents is a narrow and technical one. To come within it, all the elements of the invention, or comparable ones, must do substantially the same work in substantially the same way and be within one structure. (Citation omitted).

As to the matter of aggregation, the doctrine requires that the prior patents, or the art generally, demonstrate the segments or elements with substantially the same results and functions."

The Court stated in its finding of fact No. 58 that a review of all evidence disclosed a lack of novelty and nonobviousness, both of which are requirements for a patentable product. We disagree. There were no findings of fact concerning anticipation or aggregation, notwithstanding the rule that the law presumes a patent valid. 35 U.S.C.A. § 282. The great weight of the evidence does not support the Court's conclusion on the issue of novelty.

35 U.S.C.A. § 282 provide that one who seeks to have a patent declared invalid has the burden of establishing its invalidity by clear and convincing evidence. We have conducted a thorough review of the record. In our judgment, appellee Harvest Brand has failed to sustain this burden. [For a detailed discussion of the law concerning novelty in this Circuit see Scaramucci v. Dresser Industries, Inc., 427 F.2d 1309 (10th Cir. 1970)].

Turning now to the issue of obviousness prescribed under 35 U.S.C.A. § 103, we have reviewed the prior art in order to determine whether a person ordinarily skilled in the art would find it obvious to combine the same elements in the same manner as Staley's patent teaches us.

The record reveals that a person ordinarily skilled in the art would know that:

1. Animal feed blocks had been made in the past such as salt blocks, mineral blocks, protein blocks and molasses blocks.

2. Molasses had been used as a feed supplement and a carrier of unpalatable medicines.

3. Mineral oils had been used to facilitate blocking and improve the weatherability of blocks.

4. Feed supplements had been used which had high levels of salt.

5. Blocks had been made which used wet molasses as a wet binder.

The trial court made detailed findings to the effect that each and all of the ingredients employed by Staley in its patented block were well known to a man of ordinary skill in the art. The Court did not, however, make any findings dictated by the great weight of the evidence in the record reflecting the failures and drawbacks of the prior art in accomplishing the novel result achieved through the Staley patent. Each of the prior arts above referred to were wrought with practical limitations:

1. Protein and mineral blocks were designed to fill a particular need not necessarily connected with the function of a molasses-salt block. As a carrier of medicines they were failures because they were not palatable enough to cattle to hide the taste of the medicines and their consumption was too variable.

2. Molasses has long been known to aid animals with rueminate digestive tracts in digesting roughage. It has also been known to cause scouring if taken in large amounts. No molasses product was ever made before Staley's patent which allowed a livestock operator to place the medicine carrier unattended near his stock and be assured that his cattle were getting a proper amount of medicine. Protein and mineral blocks had too great a variation of daily intake to be successfully used. All previous molasses products were too palatable to use successfully as medicine carriers. The aggressive cattle would overfeed and the timid cattle would underfeed.

3. Mineral oils were a rather novel and effective addition to the prior art.

However, the addition of oils in large amounts softened the blocks.

4. Large amounts of salt have been incorporated into mineral and protein blocks to control consumption. The amount of salt used normally in these blocks is roughly the same amount as Staley used. However, with the highly palatable molasses blocks the daily consumption is relatively stable while the less palatable mineral and protein blocks show a relatively high rate of daily variation.

The evidence proves that cattle develop a tolerance for salt which they like. This can eventually lead to salt poisoning. As a factor in determining the prior art, this would lead one to believe that a block with a high salt content, especially when mixed with the highly palatable molasses, would slowly cause cattle to consume an increasingly larger daily ration. However, this is not true of Staley's block.

5. The use of a wet binder in molasses blocks was old in the art. Wet molasses had been used as a wet binder with dehydrated molasses to make the blocks easier to form. Wet molasses, however, causes blocking and storage problems.

Harvest Brand claimed that the prior art would teach one to mix salt, molasses (dehydrated and wet), and oil. Its own history belies this. In 1958 Harvest Brand made 100 non-infringing dehydrated molasses blocks with a wet binder for a customer. It claimed that these blocks were successful, yet several years later when it made blocks for public sale it sold blocks which the lower court found infringed on Staley's patent.

Staley introduced evidence showing the state of the art when it put its product on the market. Within two months after Staley marketed its patented block, VyLactos Laboratories was selling a non-infringing block called "Kattle Kandy". It contained molasses, a high protein level (22%) and

salt (1%). A witness from VyLactos testified that the salt level was 1% because that is what the experts recommended at that time. He also stated that consumption was regulated by the block density, i. e., the harder the block, the less each animal consumed. He admitted that the block was too palatable and that one had to limit the number of blocks available to the cattle because they would overfeed. VyLactos also had trouble with weatherability. Its blocks did not hold up well in rain. After about a year, VyLactos stopped producing its "Kattle Kandy" and introduced a block which is almost identical to Staley's block.

Harvest Brand's expert witnesses testified that it would have been easy for anyone in the feed block business to come up with Staley's block in 1962. A Staley expert in animal feeds had previously testified that in 1962 he would have been dubious about the success of any molasses blocks which contained high levels of salt. He stated that molasses and salt are hygroscopic, i. e., they both absorb large amounts of water. He also stated that they are water soluable. For these reasons, he and a Harvest Brand witness opined, one would expect serious weathering problems in a block containing salt and molasses. Another witness for Harvest Brand stated that since salt and molasses have different characteristics, one would expect problems during the blocking process. The witness testified that from his own tests in 1963 he found that molasses needs high pressure plus some water to block successfully. Salt, however, requires low pressure and an absence of water to block well. At the time these tests were conducted, Harvest Brand had not been able to make a successful block combining salt and molasses.

Harvest Brand points out that before 1962 there were many patents involving feed blocks, molasses products, molasses with medicine, and blocks with oil among others. However, most of these patented inventions had serious drawbacks. We said in McCullough Tool Company v. Well Surveys, Inc., 343 F.2d 381 (10th Cir. 1965), cert. denied 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966), *supra,* that:

> "Rudimentary or unsuccessful experiments with isolated elements of a combination do not anticipate an invention which successfully combines those elements." (Citations omitted.) 343 F. 2d at 399.

Staley admits that all of the elements are old and known in the art. However, Staley argues that as it overcame all of the problems and went against the teachings of the prior art to develop the patented block, it qualifies for a patent. We agree. As we said in *McCullough, supra*:

> "The general rule is that before a device may be patentable, the improvement over the prior art must involve more than would be obvious to one of ordinary skill in the art. (Citations omitted). If those skilled in the art are working in a given field and have failed after repeated efforts to discover a particular new and useful improvement, the person who first makes the discovery does more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor." (Citations omitted.) 343 F.2d at 399.

We feel that Staley has made such an improvement. In Bewal, Inc. v. Minnesota Mining and Manufacturing Company, 292 F.2d 159 (10th Cir. 1961), the test for determining whether a combination was patentable was stated. At 164 we said:

> "When old elements are united in such a manner that the union accomplishes either a new result or an old result in a more facile, economical and efficient way in a particular environment which presented peculiar and difficult problems, it is a true combination and patentable." (Citations omitted.)

Staley's inventors overcame serious practical problems in arriving at their patent

and advanced the art to a new level of achievement.

■ The invention requires only four ingredients. The amounts are not too critical. However, simplicity is not a bar to invention as long as the steps taken are not obvious to the ordinary mechanic. Blish, Mize and Silliman Hardware Company v. Time Saver Tools, Inc., 236 F.2d 913 (10th Cir. 1956), cert. denied 352 U.S. 1004, 77 S.Ct. 565, 1 L.Ed.2d 549 (1957); Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Company, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721 (1944).

■ We are mindful of the rule stated in Scaramucci v. Dresser Industries, Inc., 427 F.2d 1309 (10th Cir. 1970), *supra*, that the ultimate validity of a patent is a legal question for the trial court, based on findings of fact.

■ Staley's contested patent recognized that the value of feeding molasses to livestock was old in the art. It recited, however, the nutritional values and drawbacks which had previously restricted the use of feeds containing a high percentage of molasses, i. e., excessive consumption had exceeded the most efficient feed utilization and could not be conveniently and economically fed in open range. The key claim, then, in the Staley block was the use of a high percentage of molasses with salt which proved (1) to be resistant to weathering in the open range; (2) to provide in a controlled manner a source of fermentable carbohydrates for ruminants; (3) to control consumption on an economical per unit basis; and (4) to be a palatable feed block which could include a horn fly controlling amount of phenothiazine. Appellant argues that the product of these claims was entirely new and that the new product proved to have a different and surprising result. We agree. There was no contrary argument, and the lower court specifically found that the Staley feed block is useful and performs the beneficial functions claimed for it. The question of invention and thus, patentability, is one of fact involving considera-

tion of novelty, utility, commercial success, satisfaction of long-felt want, unsuccessful efforts of others, public acquiescence in validity, imitation, experiments, and independent production by others. 69 C.J.S. Patents § 70 (1951).

■■ Substantial evidence means evidence which affords a substantial basis of fact to support a conclusion. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). In its Addendum Comment the trial court concluded that "There is no new co-operation among the ingredients that produces either a different product or a different result than is known in the prior art." Having thus found, the Court specially concluded that the Staley patent lacks novelty and nonobviousness. This conclusion necessarily involved application of the fact-law process. We are persuaded, on the entire evidence, that a mistake has been committed. See United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). We hold that the district court erred in its conclusion that the Staley patent lacked novelty and non-obviousness. Therefore, we must reverse. We hold that the Staley patent is valid. We remand for further proceedings determinative of Staley's prayer for injunctive relief and damage award.

Reversed and remanded.

PICKETT, Circuit Judge (dissenting).

In reversing the trial court and sustaining the patent in this case, I think we are guilty of weighing the evidence and failing to observe the "clearly erroneous" rule. The patent defines a compressed feed block for cattle containing sodium chloride (salt), dehydrated molasses, mineral oil or edible fat, wet molasses, and phenothiazine. It is agreed that all of these elements were known in the prior art and were not invented by Staley, and that the patent in suit was issued as a result of a combination of these elements. Generally, when old elements are combined together in a manner which secures a new and useful result, or an old result in a more facile, economical

and efficient manner, the result is patentable. Scaramucci v. Dresser Industries, Inc., 427 F.2d 1309 (10th Cir. 1970); Eimco Corporation v. Peterson Filters and Engineering Co., 406 F.2d 431, 434 (10th Cir. 1968), cert. denied, 395 U.S. 963, 89 S.Ct. 2105, 23 L.Ed.2d 749 (1969). The essentials of patentability are that the invention be (1) useful, (2) new, and (3) nonobvious to a person skilled in the art. 35 U.S.C. §§ 101, 102, 103; Graham v. John Deere Co., 383 U.S. 1, 12, 86 S.Ct. 684, 15 L.Ed. 2d 545 (1966). A mere aggregation of old elements which performs no new function or produces no different result than that previously produced is not patentable. Scaramucci v. Dresser Industries, Inc., *supra.* The issues of novelty and nonobviousness present questions of fact to be determined by the trial court and these findings are not to be disturbed on appeal unless clearly erroneous. Boutell v. Volk & Wilson-Volk, Inc., 449 F.2d 673 (10th Cir., 1971); Scaramucci v. Dresser Industries, Inc., *supra*; Eimco Corporation v. Peterson Filters and Engineering Co., *supra*; Graham v. John Deere Co., *supra.*[1]

Although there was other evidence, the parties to this litigation relied primarily on the testimony of expert witnesses. The trial court made detailed and exhaustive findings relating to the novelty and nonobviousness of the patent. It was specifically found that the prior art revealed the concept of varying the quantity of salt in mixtures to regulate consumption of food by cattle, and that the use of molasses as a binder in making feed blocks was also known to the art. The other ingredients as used in the patentee's feed block were found to be old. In more or less of a summary of its findings, the trial court said:

"In making the foregoing findings, the Court has specifically relied on the weight and credibility of the evidence, given attention to the testimony of the extremely well-qualified expert witnesses on both sides, with special credulity being imparted to defendant's expert witness Burns as to the state of the art, which the Court found to be buttressed with an abundance of written evidence in the form of former patents and learned treatises, negativing both the novelty and nonobviousness requirements for a patentable product."

I shall not attempt to detail the facts, but from a careful review of the record I am satisfied that the trial court's findings are not only supported by substantial evidence, but by a preponderance of the evidence. I would affirm.

---

1. For the purpose of suggesting some guidelines to be helpful to the trial courts in determining factual inquiries as to nonobviousness, it was said in Graham v. John Deere Co., 383 U.S. 1, at 17–18, 86 S.Ct. 684, at 694, 15 L.Ed.2d 545 (1966):

"While the ultimate question of patent validity is one of law, A. & P. Tea Co. v. Supermarket Corp., *supra*, [340 U.S. 147,] at 155, [71 S.Ct. 127 at 131, 95 L.Ed. 162] the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. . . .

"This is not to say, however, that there will not be difficulties in applying the nonobviousness test. What is obvious is not a question upon which there is likely to be uniformity of thought in every given factual context. The difficulties, however, are comparable to those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amenable to a case-by-case development. We believe that strict observance of the requirements laid down here will result in that uniformity and definiteness which Congress called for in the 1952 Act."