The SCHLEGEL MANUFACTURING CO., Plaintiff,

v.

KING ALUMINUM CORPORATION, and U S M Corporation, Defendants.

Civ. No. 3706.

United States District Court,
S. D. Ohio, W. D.

Dec. 11, 1973.

Richard H. Evans, Wood, Herron & Evans, Cincinnati, Ohio, for plaintiff.

Lawrence B. Biebel, Dayton, Ohio, for defendant.

ORDER

WEINMAN, District Judge.

This cause came on to be considered pursuant to plaintiff's motion to have the defendants herein held in contempt for alleged violation of the order of this Court in the form of a decree consented to by the parties which was filed in this Court on February 22, 1972. The defendants have moved this Court to stay further proceedings in this Court with regard to plaintiff's motion for contempt, and have instituted a declaratory judgment suit in another forum against the plaintiff in this case. The declara-

tory judgment suit seeks to litigate the issues of patent infringement and patent validity with regard to plaintiff's patent on weatherstripping—the matters at issue in the original suit in this case which were in fact settled in favor of plaintiff by this Court's decree of February 22, 1972. In turn, the original plaintiff has moved this Court to enjoin the defendants herein from proceeding with further action in the foreign forum with regard to their declaratory judgment suit, and has moved that a date be set in this Court for an evidentiary hearing with regard to the motion for contempt now pending in this Court.

It appears to this Court that the numerous manuevers outlined above represent something of a legal tempest in a teapot in that the issues now presented for decision do not really demand the extensive cross filing of briefs, motions, and orders which has heretofore taken place, and the Court now moves to the disposition of these matters, seriatim.

■ It is a rather basic proposition that a federal court of equity has extensive powers which it may use in aid of its jurisdiction or in order to effectuate its judgments. The parties herein have extensively briefed and argued whether this Court or the foreign forum would be the best place to resolve this controversy. In this Court the proceeding is on a motion for contempt. In the South Carolina District Court the proceeding is in the form of a declaratory judgment action. Since both fora have jurisdiction of the matters before them, the proper choice of a forum ultimately resolves itself into an exercise of the discretion of the Courts involved. This discretion is to be exercised based on sound considerations of judicial policy and fairness to the parties. The particular place where certain events transpired or who won a particular race to a courthouse is not so important as a rational choice of forum made after consideration of numerous factors important to the courts and the parties. These factors include, but are not limited to, the mutual convenience of the parties, their geographical location, the loci of witnesses and exhibits, the familiarity of the Court with the problems involved, the status of the Court's docket, and whether previous litigation in a case has taken place in a particular arena so as to give that court a feeling for and awareness of the issues in a case that another forum might not have.

The order staying proceedings of July 11, 1973, Civil Action 73–544, from the District Court in South Carolina and the transcript of the proceedings which transpired before that court with respect to this matter on July 10, 1973 make it clear that after consideration of the above factors the South Carolina Court deferred to the exercise of this Court's discretion in this case. The South Carolina Court held that the current focus of this controversy is in Ohio in this Court. This Court is in full agreement with the Honorable Court in South Carolina. The defendants admit that resolution of this controversy as to proper forum and procedure is a matter for the exercise of the Court's discretion, but complain that they have no remedy except the South Carolina declaratory judgment suit with regard to this controversy concerning a patent on plaintiff's weatherstripping material. That argument could be viewed by a more skeptical court as an exercise in frivolity, because in view of this Court's decree of February 22, 1972 the obvious remedy for the defendant is to comply in good faith with this Court's order and not to infringe the valid patents of others. The Court, of course, is not expressing an opinion as to whether defendants are in fact infringing any patent, but merely reminds defendants that not all remedies need come from courts. At any rate, this Court now holds that the proper forum for resolution of this dispute is this Court, and that the proper procedural form is in a trial with regard to plaintiff's motion for contempt.

Accordingly, defendants' motion to stay proceedings in this Court pending resolution of the suit in South Carolina should be and hereby is denied. The

motion of plaintiff to enjoin the defendants from further proceedings with regard to this matter in South Carolina is now moot. Further, the plaintiff's motion for contempt is hereby set for trial in this Court on February 12, 1974 at 10 o'clock A.M.

■ It is further ordered that in the trial on February 12, 1974 the validity of defendants' patent on their modified form of weatherstripping may be placed in issue and adjudicated if that should be necessary to a full and proper decision in this case, and the parties are hereby instructed to plan for the trial accordingly. The issue of whether the modified structure of defendants' infringes or interferes with the valid patent of plaintiff is necessary to proper disposition of this matter also and that matter will, of course, be disposed of at the trial. However, defendants shall not be permitted to raise the issue of the validity of plaintiff's patent on *their* form of weatherstripping. That matter was settled by the consent decree entered by this court on February 22, 1972. The parties and issues are the same in the present proceeding as in the original suit in this matter; indeed, this is in reality a part of the same case. The consent decree is therefore res adjudicata the law of this case, with regard to the validity of plaintiff's original patent. Defendants' argument that the consent decree does not estop them from reopening the validity question as to plaintiff's patent is based on three principal cases. The first of these cases is Business Forms Finishing Service, Inc. v. Carson, 452 F.2d 70 (7th Cir. 1971). This case allowed the question of validity to be reopened in a consent decree case because the question of validity was not actually litigated in the District Court. However, a close reading of the *Carson* case reveals the real basis of the holding as the peculiar set of facts presented to the Seventh Circuit in that particular case. There is no reason to suspect that the case stands for the proposition that the issue of patent va-

lidity may always be reopened when it is found pursuant to a consent decree. Defendants next rely on Butterfield v. Oculus Contact Lens Company, 332 F.Supp. 750 (N.D.Ill.1971). That case did allow a consent decree resolving the validity of a patent to be later reopened on the validity issue by the same parties. This is simply an instance where a "hard case" has made some "bad law." The *Butterfield* result is based on that Court's misapprehension of the nature of the public policy underpinnings of Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L. Ed.2d 610 (1969), the third case relied on by defendants to make their point. In the *Lear* case, the Supreme Court dealt with an accommodation of the common law of contracts and the federal law of patents. No consent decree was even involved in *Lear*. The Supreme Court held that federal patent law takes precedence over the common law of contracts where the two are in obvious conflict. The Court was concerned that holders of patents not be able to ward off prospective challenges to the validity of their patents by the use of licensing agreement contracts. The Court based its holding on the public policy consideration that those who hold limited monopolies on a product (i. e., a patent) not be allowed unrestricted use of contracts to perpetuate their monopoly. The reason for this is the public interest involved in knowing whether a monopoly is lawful and, if it is not, having it challenged in Court. Such a derogation of contract law in favor of patent law is a far cry from allowing identical parties to reopen valid judicial decrees at their mere whim. When a licensing agreement is based on the questionable validity of a certain patent, the public interest with regard to monopoly is extant in the case and we look to public policy to arrive at sound results. In the case of a consent decree, however, we only look to the equities involved as to the particular parties and the public interest is not at stake. A consent decree is voluntary and is yet a judicial act. Once parties invoke the

aid of a court of the United States to settle their affairs, they do far more than simply make a common law contract. *See, Lear,* supra. Sound considerations of judicial policy, not to mention a sense of respect for the Courts, require that parties not be allowed to implore a judge of the United States to sign a judicial decree, and then later implore him to regard his signature for naught. Courts of the United States are not to be so used; it is imperative that all litigants recognize this. Therefore, when a defendant, as here, admits the validity of a patent in a consent decree, he is thereafter estopped, although other parties are not, from raising the issue of validity.

Since preparation of this Court's order in this case, plaintiffs have made available to the Court a copy of the Seventh Circuit's most recent opinion in the cases of Ransburg Electro Coating Corp. v. Spiller and Spiller, Inc. v. Ionic Electrostatic Corp., 489 F.2d 974, decided November 16, 1973. These cases dealt with the impact of the *Lear* case, supra, on federal policy with regard to settlement of lawsuits and judicial economy. The Seventh Circuit reasoned that the *Lear* case did not signify that something called "federal public policy on patents" could be used to undo the effects of a valid lawsuit settlement contract. That opinion gives this Court all the more reason to hold, as it does above, that once a party enters into a consent decree accepting the validity of a particular patent, that party is estopped from raising the validity issue in subsequent litigation regarding the same parties and the same patent.

Therefore, defendants' motion to stay proceedings on plaintiff's motion for contempt is hereby denied; plaintiff's motion for contempt is hereby set for hearing in a trial to begin at 10 o'clock A.M. on February 12, 1974, at which trial defendants may not raise the issue of the validity of plaintiff's patent No. 3,175,256.

It is so ordered.