The **SCHLEGEL MANUFACTURING COMPANY**, Plaintiff,

v.

**KING ALUMINUM CORPORATION** and USM Corporation, Defendants.

No. 3706.

United States District Court,
S. D. Ohio, W. D.

Sept. 4, 1974.

James M. Wetzel and Robert M. Ward, Wetzel, Greenawalt & Fitzgibbon, Chicago, Ill., George W. Shaw, Cumpston, Shaw & Stephens, Rochester, N.Y., Richard H. Evans, Wood, Herron & Evans, Cincinnati, Ohio, for plaintiff.

George N. Hibben and Albert W. Bicknell, Hibben, Noyes & Bicknell, Chicago, Ill., Lawrence B. Biebel, Biebel, French & Bugg, Dayton, Ohio, for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

WEINMAN, District Judge.

This cause of action has been tried to the Court as a result of the motion of plaintiff to have the defendants adjudged in civil contempt for violating the terms of a decree previously rendered by this Court. A concise history

of this litigation is stated in this Court's opinion printed as Schlegel Manufacturing Co. v. King Aluminum Corp., 369 F. Supp. 650 (S.D.O.1973). Accordingly, the Court now states its findings of fact and conclusions of law, F.R.Civ.P. 52.

## FINDINGS OF FACT

1. Plaintiff, The Schlegel Manufacturing Company, is a corporation of the State of New York and has its principal place of business at 1555 Jefferson Road, Rochester, New York 14622.

2. Defendant, USM Corporation, is a corporation of the State of New Jersey and has its principal place of business in Boston, Massachusetts.

3. This action arises under the patent laws of the United States of America, more particularly 35 U.S.C. §§ 271, 281.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1338.

5. Venue is proper in this Court, 28 U.S.C. § 1400(b).

6. This is a motion for contempt. On February 22, 1972 this Court entered its final judgment in the above entitled patent infringement action which, *inter alia,* held United States Letters Patent No. 3,175,256, the patent in suit, valid in law.

7. The Court further held that the defendant, USM, had infringed the patent by the making and selling of its Series 892 and 893 pile weatherstripping having a flexible, impervious barrier in the pile.

8. The Court enjoined the defendant "From the unauthorized making, using or selling or inducing others to use pile weatherstripping having a flexible, impervious barrier, as represented by USM's series 892 and 893."

9. Since February 22, 1972 the Bailey Division of USM has produced and sold pile weatherstripping having a flexible impervious barrier in the pile and bearing parts numbers 11524–270 and 11527–270 and which is referred to as "New Structure-USM."

10. Sales of the "New Structure-USM" pile weatherstripping were made to Teller-Norrab, Inc. of Canton, Ohio and Thermal Industries of Pittsburgh, Pennsylvania.

11. These USM products were sold under the name "Twin-Fin."

12. On May 11, 1973 Schlegel filed its motion for contempt charging USM with the willful and deliberate violation of the injunction of this Court because of the making and selling of the "New Structure-USM."

13. As USM sought to stay the contempt motion, a hearing was had on October 16, 1973 from which an order was issued denying the motion to stay and setting a hearing date on the motion for contempt. (Order of December 11, 1973 at 5–6).

14. In late 1972, Schlegel advised USM that its new "Twin-Fin" construction constituted a violation of the settlement and might be in contempt.

15. At a meeting in Boston, Massachusetts arranged between the parties on May 8, 1973 to resolve this new issue, USM advised that it had that day filed an action entitled USM Corp. v. The Schlegel Mfg. Co., Civil Action No. 73–544, in the United States District Court for the District of South Carolina seeking a declaratory judgment of non-infringement for its new "Twin-Fin" construction and of invalidity of the *Horton* Patent, United States Patent No. 3,175,256.

16. Schlegel sought to stay the South Carolina action at the same time that USM sought to stay this action. The South Carolina action has been stayed pending a determination in this suit.

17. On January 10, 1974 USM answered Schlegel's motion for contempt, denying contempt, and denying infringement of the patent in suit.

18. As an affirmative defense USM asserted that there was no infringement because of the doctrine of file wrapper estoppel.

19. Further, USM asserted its Johnson et al. United States Patent No. 3,745,053 as covering the "New Structure-USM" and as a defense to the accusation of infringement.

20. USM sought to attack collaterally the previous judgment by attacking the validity of the patent and by attacking the settlement documents from which the judgment evolved.

21. By the order of December 11, 1973 this Court had ruled that the single issue to be determined at the trial was whether the "New Structure-USM" infringes or interferes with the valid patent of Schlegel and that the collateral matters of validity and misuse could not be raised. The Court additionally ruled that, if necessary for a full and proper decision herein, the validity of USM's Johnson et al. United States Patent No. 3,745,053 could be raised and determined at trial. (Order of December 11, 1973 at 5, 6).

22. The series 892 "Enjoined Structure-USM" is made up of a base strip, spaced bodies of pile fibers with a pile free gap there between, and a barrier strip extending longitudinally with the base strip and projecting laterally to the base strip. In the "Enjoined Structure-USM" the barrier strip is fixed at one edge in the gap by bonding the barrier strip only along its edge to the base strip.

23. The USM enjoined structure used the same elements to accomplish the same purpose in the same way as the patented structure and is an infringement of the *Horton* patent.

24. The "New Structure-USM" includes precisely the same elements as both the patented structure and the "Enjoined Structure-USM", *i. e.*, a base strip, spaced bodies of pile fibers with a pile free gap there between and a barrier strip extending longitudinally with the base strip and projecting laterally to the base strip.

25. The only difference between "Enjoined Structure-USM" and the "New Structure-USM" is that in the latter, the means of barrier strip attachment is "slightly altered" to bond the barrier strip to the pile rather than to the base.

26. The *Horton* patent teaches that the barrier strip may be bonded to the base strip and to the pile fibers.

27. USM's witness, Mr. Johnson, testified that the old, "Enjoined Structure-USM" was changed to the accused "New Structure-USM" by slightly altering the means of fin attachment from bonding solely to the base strip to bonding solely to the pile fibers.

28. Indeed, Johnson argued to a successful conclusion that these two structures were equivalent, both commercially and functionally.

29. Based on actual testing, Schlegel's technical expert, Mr. Lind, found the "Enjoined Structure-USM" to be the functional equivalent of the "New Structure-USM."

30. Further, the ultimate test of infringement which is met here is whether the accused device does the same work in substantially the same way to accomplish the same result. *See,* Graver Tank and Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), USM's witness, Mr. Johnson, so testified.

31. The only evidence of opinions sought by defendant on the question of infringement of plaintiff's patent came from Mr. Johnson, a layman in USM's employ.

32. On May 5, 1970 Johnson, who is not an attorney, wrote to the USM Patent Department and gave the opinion that in the *Horton* patent, the claims are limited to the central fin being "attached" to the base strip and asked whether his proposed construction of bonding the fin to the pile would "subvert the Schlegel patent . . . ? "

33. USM produced no evidence of any response to Johnson's quaere.

34. Johnson later opined to outsiders that this slight alteration of bonding the

fin to the pile avoided patent infringement.

35. Although there was much reference at trial to legal opinions having been given to USM, USM's counsel admitted at trial there was no evidence of any written opinions, and no one was called upon to testify as having given an opinion.

36. The opinions of laymen on matters of law are entitled to little weight and do not rebut competent evidence to the contrary, in this case.

37. The "New Structure-USM" is equivalent to the "Enjoined Structure-USM" and also comes within the claims of *Horton*.

38. For USM to have proceeded to this infringing structure without a legal opinion and while its lawyers were entering into the present injunction constitutes willful behavior.

39. The doctrine of file wrapper estoppel says that where a claim has been amended to avoid a rejection over the prior art, the patentee is thereafter estopped from recapturing by way of equivalents that which was abandoned from the claim by the amendment. *See, e. g.,* Kolene Corp. v. Motor City Metal Treating, Inc., 440 F.2d 77 (6th Cir. 1971); Eimco Corp. v. Peterson Filters and Engineering Co., 406 F.2d 431, 438 (10th Cir. 1968).

40. The doctrine of file wrapper estoppel is applicable only when the doctrine of equivalents is resorted to for proving infringement. If literal infringement is made out, file wrapper estoppel need have no application. Kolene Corp. v. Motor City Metal Treating, Inc., 440 F.2d 77, 82 (6th Cir. 1971). There is literal infringement here and no available file wrapper estoppel defense.

41. Additionally, in this contempt case, the equivalency test is between the "Enjoined Structure USM" and the "New Structure-USM", and not between the new, accused device and the claims of the patent in suit. *Cf.* Pan-duit Corp. v. Stahlin Bros. Works, Inc., 338 F.Supp. 1240, 1241 (W.D.Mich. 1972), aff'd, 476 F.2d 1286 (6th Cir. 1973). Hence, for that further reason, the doctrine of file wrapper estoppel has no application here.

42. There was no change in the scope of claims during prosecution of the patent in suit such as would generate an equitable estoppel against applying the language of the claims to the "New Structure—USM."

43. USM relies upon its United States Patent No. 3,745,053 to *Johnson* and *Newton* as covering its "New Structure—USM."

44. The *Horton* patent is referred to in the Johnson et al. patent. There it is said that in the Horton structure "the barrier strip . . . (is) secured to the base . . ."

45. Having made that positive characterization of *Horton* to the Patent Office, there is no evidence in the file that USM also advised the Patent Office that *Horton* teaches adhering the barrier strip to the pile fibers.

46. The novelty urged to the Patent Office in the specification and in the claims is that the barrier is secured "only" to the pile.

47. There is no indication in the file that the Patent Office knew that *Horton* also taught adhering or securing the barrier to the pile.

48. Accordingly, Johnson et al. is anticipated by *Horton* and is invalid. (35 U.S.C. § 102).

49. Johnson et al. does not teach that any unique benefit is achieved by changing the method of attachment of the barrier strip from being secured to the base strip and to the pile in *Horton*, to being secured only to the pile. Hence, such a change is obvious and unpatentable. (35 U.S.C. § 103).

50. The Johnson et al. patent is unenforceable and invalid because of conduct before the Patent Office in obtaining the patent.

## DISCUSSION

Having found the above facts, and in consideration of the relief to be granted in this case, the Court finds it necessary to state clearly the law applicable to this kind of situation with respect to an appeal. It shall be necessary to order an accounting to give plaintiff adequate relief in this case. If this Court's order were reversed on appeal, however, an accounting would not be necessary. Consequently, 28 U.S.C. § 1292(a)(4) provides that an appeal can be taken from "judgments in civil actions for patent infringement which are final except for accounting." This is such a case. It is clear that, if ordered by the Court, an accounting may be stayed pending appeal, F.R.Civ.P. 62(a), American Saint Gobain Corp. v. Armstrong Glass Co., 300 F.Supp. 419 (E.D. Tenn.1969). Conversely, in the context of a contempt proceeding the district court's order is not appealable if the district judge *specifically retains jurisdiction* over the proceeding in his order, American Saint Gobain Corp. v. Armstrong Glass Co., 418 F.2d 571 (6th Cir. 1969), *see also*, Bergman v. Aluminum Lock Shingle Corp., 237 F.2d 386 (9th Cir. 1956).

It has been held many times that 28 U.S.C. § 1292(a)(4) gives a right of interlocutory appeal in a patent case where there is an adjudication of infringement (which necessarily implies patent validity), an accounting is ordered, and the adjudication is final except for the actual accounting, Ronel Corp. v. Anchor Lock of Florida, Inc., 312 F.2d 207, 209 (5th Cir. 1963); Illinois Tool Works Inc. v. Brunsing, 378 F.2d 234, 236 (9th Cir. 1967); American Cyanamid Co. v. Lincoln Laboratories, Inc., 403 F.2d 486 (7th Cir. 1968). 28 U.S.C. § 1292 gives Circuit Courts of Appeals jurisdiction over district court decrees of infringement and validity based on the merits of the case which are entered prior to actual determination of the amounts of profits or damages to be awarded, Russell Box Co. v. Grant Paper Box Co., 179 F.2d 785, 787 (1st Cir. 1950). The statute permits:

". . . Appeals from interlocutory orders going to the merits in order to save the parties the expense and delay, often substantial, of accounting proceedings which would go for naught if recovery should ultimately be denied by reversal on appeal of a decree on the merits." *Russell, supra,* at 787, McCullough v. Kammerer Corp., 331 U.S. 96, 98, 67 S.Ct. 1165, 91 L.Ed. 1365 (1946) (A good discussion of the policy of the statute per Justice Black).

However, the statute will not permit appeal during the actual course of accounting proceedings per se, *Russell, supra.* 179 F.2d at 788.

Thus, 28 U.S.C. § 1292(a)(4) is a patent case exception to the policy against interlocutory appeals. It is meant to save the parties the expense and delay of an accounting until the decision on the merits is ultimately final. Much, however, is still left to the district court's discretion. The present case is one in which an accounting will be necessary to afford PROPER RELIEF. But, the Court wishes to make it clear that it does not specifically retain jurisdiction of this case, and that the accounting is ordered stayed in this case until after decision on appeal if such there be.

During the earlier process of the litigation in this case the defendants brought to the attention of the Court certain cases decided by the United States District Court for the Northern District of Illinois, viz., Butterfield v. Oculus Contact Lens Company, 332 F. Supp. 750 (N.D.Ill.1971); Kraly v. National Distillers et al., 319 F.Supp. 1349 (N.D.Ill.1970), and Crane v. Aeroquip Corporation, 364 F.Supp. 547 (N.D.Ill. 1971). This Court thoroughly considered the application of those cases to the present case at that time, but in the interests of justice requested to be kept advised as to the progress of those cases in the Courts of Appeals. In fairness to

the defendants the Court shall now dispose of the alleged applicability of those cases to the present matter. The *Crane* case, *supra,* is apparently still on appeal. The Court reaffirms its holding, however, that this case is not controlled by *Crane.* As to the *Butterfield* case, *supra,* it was affirmed in a *Per Curiam* decision at 177 U.S.P.Q. 33 (1973). That short decision is too brief and limited to control or affect in any fashion this Court's order of December 11, 1973 in this case. Furthermore, this Court thoroughly discussed *Butterfield* in its order of December 11, 1973 and now adheres to the opinion expressed in that order. Whatever the District Court in *Butterfield* may have permitted the parties to do in that case, the law does not *require* this Court to do the same in this case, and because this Court continues to disagree with the *Butterfield* holding for the reasons expressed in the order of December 11, 1973, that case will not be followed here. The Court also agrees with plaintiff that the *Per Curiam* affirmance of *Butterfield* is so closely limited to a single issue (validity) that it is not relevant here. The *Kraly* case, *supra,* was affirmed by the Seventh Circuit in an unpublished order of May 8, 1974, Kraly v. National Distillers and Chemical Corporation, Appeals. Two things must be noted with respect to this development. Firstly, the *Kraly* case is still pending before the Seventh Circuit on a petition for rehearing. Secondly, that case is principally concerned with a type of contract (a licensing agreement for the payment of royalties) which is not at all in issue in the present case and which also is evocative of different considerations than the issue of the validity of a consent decree, as was fully expressed in this Court's order of December 11, 1973. Thus, after fully considering the latest developments in the above three cases, the Court remains convinced of the rectitude of its order of December 11, 1973.

This Court thus considers that it has effectively responded to the defendants' contentions that the *Kraly, Crane,* and *Butterfield* cases, *supra,* should affect any past or future order of this Court on the issue of the validity of the original consent decree entered by this Court in this case. Moreover, inasmuch as the above cases represent the views of the Seventh Circuit on this whole matter, they are far too cursory and undeveloped to have any real import when compared with a much more pertinent, clear and indeed recent case decided by the Seventh Circuit which clearly appears to be at odds with the interpretation defendants seek to make of the above three cases, *see,* Ransburg Electro Coating Corp. v. Spiller & Spiller, Inc., 489 F.2d 974 (7th Cir., Order Dec. 7, 1973). That case dealt in a patent law context, with a challenge to a (legal) settlement agreement which challenge was ostensibly based on the public policy of patent law as alleged to have been expressed in Lear, Inc. v. Adkins, 395 U.S. 653, 89 S. Ct. 1902, 23 L.Ed.2d 610 (1969) and Blonder Tongue Labs, Inc. v. University Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The Seventh Circuit first noted that "in general settlements are judicially encouraged and favored as a matter of sound public policy," *Ransburg, supra,* 489 F.2d at 978, *see also,* Williams v. First National Bank, 216 U.S. 582, 30 S.Ct. 441, 54 L. Ed. 625 (1910). The Court then went on to turn away the attack on the settlement agreement based on Lear, supra, by holding that:

"Spiller urges, however, that the federal patent policy, as enunciated in Lear, that 'all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent,' prevails over the policy favoring settlement of disputes. Although the federal patent policy prevails over 'the technical requirements of contract doctrine' (395 U.S. at 670, 89 S.Ct. at 1911 [23 L.Ed.2d 610]), we believe that such policy must occupy a subsidiary position to the fundamental policy favoring the expedient and orderly settlement of disputes and the fostering of judicial economy. To allow a

subversion of the deeply instilled policy of settlement of legitimate disputes by applying the federal patent policy as enunciated in Lear would effectively strip good faith settlements of any meaning. The vehicle of settlement would be a useless item if contracts, such as the one here, were subject to invalidation after they were consummated. We think the federal patent policy should not be carried so far. Indeed, in our decision in Maxon Premix Burner Co., Inc. v. Eclipse Fuel Eng. Co., 471 F.2d 308 (7th Cir. 1972), we were faced with a choice between the public policy encouraging tests of patent validity and the public policy favoring conservation of judicial time and limitations on expensive litigation. We held the policy favoring judicial economy to be more significant. To allow Spiller to reopen this settlement contract would be contrary to the avowed need for judicial economy declared in Blonder-Tongue, Labs., Inc. v. University Foundation, 402 U.S. 313, 334–49, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and hardly consonant with our decision in Maxon.

"Moreover, if we were to allow the successful challenge of the instant settlement contract, we would do little toward furthering the collateral policy declared in Lear favoring the expeditious and early challenge to the validity of the underlying patent. 395 U.S. at 673, 674, 89 S.Ct. 1902 [23 L.Ed.2d 610]. See also Troxel Manufacturing Co. v. Schwinn Bicycle Co., 465 F.2d 1253, 1257 (6th Cir. 1972)." *Ransburg, supra,* 489 F.2d at 978.

The above quotation is really more representative of the Seventh Circuit's position on patent policy than the position contended for by defendants. The above approach is also commendably cognizant of the policies of finality of decrees and settlements, as well as judicial economy. In these respects the Seventh Circuit is clearly not at odds with this Court's interpretation of the effect of consent decrees in the context of patent litigation, *see,* Schlegel Manufacturing Co. v. King Aluminum Corp., 369 F. Supp. 650 (S.D.O.1973). Indeed, the effects of settlement agreements and consent decrees are so similar in the context of the present kind of case that the opinion of the Seventh Circuit in *Ransburg, supra,* has the same basic logical thrust as this Court's opinion in *Schlegel, supra.* Moreover, in the context of the present case this Court's reasoning on the consent decree issue is supportable on an even broader basis than its mere similarity to the policy of making settlement agreements final yet viable. This reasoning is clearly delineated in *Schlegel, supra,* and bears no repetition here beyond what has just been stated.

## CONCLUSIONS OF LAW AND ORDER

1. This Court has jurisdiction of the subject matter and jurisdiction over the parties.

2. The accused "New Structure-USM" is the equivalent of the original "Enjoined Structure—USM" in relation to the *Horton* United States Patent No. 3,175,256.

3. The accused "New Structure—USM" infringes the claims of the valid patent of *Horton, supra.*

4. USM has violated the injunction of this Court wherefore, it is in contempt.

5. The permanent injunction of this Court's order of February 22, 1972 is hereby reaffirmed and ordered continued.

6. USM's contempt was willful.

7. USM is ordered to account to Schlegel for all profits derived from its sales of the contemptuous construction.

8. Such accounting is hereby ordered stayed pending appeal of this case pursuant to 28 U.S.C. § 1292(a)(4).

9. USM's United States Letters Patent No. 3,745,053 to Johnson et al., asserted herein by USM, is invalid.

10. Any finding of fact herein which is deemed to be a conclusion of law shall be so treated, and vice versa.

It is so ordered.