The SCHLEGEL MANUFACTURING
COMPANY, Plaintiff-Appellee,

v.

USM CORPORATION,
Defendant-Appellant.

No. 74–2256.

United States Court of Appeals,
Sixth Circuit.

Argued April 7, 1975.

Decided Sept. 25, 1975.

Certiorari Denied April 5, 1976.
See 96 S.Ct. 1509.

Lawrence B. Beibel, Beibel, French & Bugg, Dayton, Ohio, George N. Hibben, Hibben, Noyes & Bicknell, Chicago, Ill., for defendant-appellant.

Richard H. Evans, Wood, Herron & Evans, Cincinnati, Ohio, George W. Shaw, Cumpston, Shaw & Stephens, Rochester, N. Y., James M. Wetzel, Robert M. Ward, Chicago, Ill., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and ALLEN, District Judge.*

PER CURIAM.

This case involves an adjudication of contempt for the violation of the terms of a consent decree in a patent infringement action. The consent decree expressly stated that the patent was valid, and that defendants were guilty of infringement. Further infringement was enjoined. On motion for adjudication of contempt the District Court held that the validity of the infringed patent could not be raised in the contempt proceeding and that the contemnor's patent, asserted as a defense, was invalid. We agree

---

* Honorable Charles M. Allen, United States District Judge for the Western District of Kentucky, sitting by designation.

that the consent decree is res judicata on the issue of validity, and that the contemnor's patent is invalid. We affirm the judgment of the District Court.

The consent decree grew out of an action filed on June 23, 1969, by Schlegel Manufacturing Company (hereinafter Schlegel) against King Aluminum Company for infringement of U. S. Patent No. 3,175,256 to Horton (hereinafter Horton patent). Discovery proceedings revealed that USM, which manufactured the accused weatherstripping through its Bailey Division, was an indemnitor to King Aluminum for patent infringement.

After the infringement action was filed, settlement negotiations were instituted and the parties ultimately agreed among themselves to compromise. These private negotiations were brought to the attention of the court on February 22, 1972, when USM moved to join as a party defendant and entered into an agreed stipulation settling the litigation. On that same date the District Court granted joinder and entered final judgment. The court's decree provided that:

3. Said Letters Patent # 3,175,256 is good and valid in law.

4. Each of the Defendants, KING ALUMINUM CORPORATION and USM CORPORATION, by its Bailey Division, individually has infringed said Letters Patent by making and/or selling pile weatherstripping having a flexible impervious barrier in the pile as represented by USM's series 892 and 893 and embodying the inventions disclosed and claimed therein.

5. Each of the Defendants, its agents, servants, employees, privies, successors and assigns, are hereby permanently enjoined and restrained:

From the unauthorized making or using or selling or inducing others to use pile weatherstripping having a flexible, impervious barrier in the pile as represented by USM's series 892 and 893.

In early February 1972 USM engineers recommended that a patent application be filed on a new embodiment of weatherstripping and that the company follow through on commercial development of this product. The application was filed on May 26, 1972, and issued as U. S. Patent No. 3,745,053 to Johnson et al. (hereinafter Johnson patent) on July 10, 1973. Weatherstripping which conformed to the Johnson patent was produced and sold by USM during the pendency of the application and after its allowance.

Schlegel became aware of the Johnson embodiment and notified USM that the new form infringed the Horton patent and that the infringement was a violation of the injunction entered pursuant to the consent decree. USM responded by filing a declaratory judgment action for invalidity of the Horton patent in the District Court for South Carolina.

On May 11, 1973 Schlegel filed a motion for contempt with the District Court for the Southern District of Ohio, the court which had entered the prior consent decree. In a published opinion the Ohio District Court refused to stay the contempt proceedings in deference to the South Carolina declaratory judgment action. *Schlegel Mfg. Co. v. King Aluminum Co.,* 369 F.Supp. 650 (S.D.Ohio 1973). On January 16, 1974 the South Carolina District Court ordered that the action pending before that court be stayed pending the outcome of the contempt proceedings.

After a full hearing on the contempt motion the District Court held that the manufacture of USM's new embodiment violated the terms of the decree. USM was held in willful contempt, an accounting was ordered, and the Johnson patent was held invalid. The District Court's findings are reported at 381 F.Supp. 649 (S.D.Ohio 1974). The present appeal is from that decision.

*I. The Invention*

The Horton patent discloses a flexible weatherstrip which is used to seal joints between doors or windows and their surrounding frames. Flexible upstanding

pile fibers are secured to a textile base strip, and an impervious barrier is secured along the center of the pile to the base strip. This barrier is described in claim 1 of the Horton patent as follows:

a barrier strip of impervious, flexible sheet material fixed at one edge to said base strip in said pile gap, to project laterally from and extend longitudinally of said base strip to seal and support said fiber bodies.

The accused device is described in the Johnson patent as a similar type of weatherstrip with an impervious barrier. However, the Johnson barrier is not attached to the base strip. It is attached adhesively to the fibers themselves and the bottom edge of the barrier is spaced a short distance from the base strip.

## II. Res Judicata

In the action for contempt USM sought to introduce evidence which would show that the Horton patent was invalid. The District Court held that the prior consent decree was res judicata of that issue and that the issue was foreclosed in the contempt proceeding. 369 F.Supp. at 652. On this appeal USM contends that the public policy interests discussed in *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), renders a finding of invalidity more important than the policies of finality served by the doctrine of res judicata.[1]

The present action fits squarely within the rules defining the bounds of res judicata. As stated by the District Court "indeed this is in reality a part of" the first litigation. 369 F.Supp. at 652. The consent decree represents more than a mere agreement between the parties, or a stipulated dismissal. The District Court received the agreement, signed it and ordered it entered as a final judgment. We, therefore, are not faced with the difficulties in characterizing the decree as a dismissal without prejudice or a

final consent decree, see *Brunswick v. Chrysler Corp.*, 408 F.2d 335 (7th Cir. 1969), and an adjudication of infringement and validity need not be inferred, see *Kraly v. National Distillers & Chem. Corp.*, 502 F.2d 1366 (7th Cir. 1974). This is a consent decree that clearly states that the Horton patent is valid and infringed. See *Warner v. Tennessee Prod. Corp.*, 57 F.2d 642 (6th Cir.), *cert. denied*, 287 U.S. 632, 53 S.Ct. 83, 77 L.Ed. 548 (1932).

The principal issue then is not whether res judicata applies in the traditional sense, considering the facts of the case and the requirements of that doctrine, but rather whether the entire policy of res judicata is overridden by the public interest in purging an invalid patent of its status as a government-created monopoly. We recognize that res judicata is not a wholly inflexible doctrine, and that in rare instances public policy may mandate the rejection of that principle. 1B J. Moore, Federal Practice ¶ 0.405[11] (2d ed. 1974); see *Addressograph-Multigraph Corp. v. Cooper*, 156 F.2d 483, 485 (2d Cir. 1946).

Public policy considerations in patent litigation have long been recognized by the Supreme Court. In *Mercoid Corp. v. Mid-Continent Investment Co.*, 320 U.S. 661, 670–71, 64 S.Ct. 268, 88 L.Ed. 376 (1944), the Court considered the question of res judicata with respect to certain defenses that might have been, but were not, advanced by parties privy to a first suit. In the earlier suit the patent was held to be valid. The Court determined that this finding was not res judicata of a patent misuse counterclaim for damages that could have been, but was not, litigated in the first action. The Court stated:

"Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private

1. See generally, Note, " 'To bind or not to bind'; Bar and Merger Treatment of Consent Decrees in Patent Infringement Litigation," 74 Colum.L.Rev. 1322 (1974).

interests are involved." *Virginian Ry. Co. v. System Federation No. 40,* 300 U.S. 515, 552, [57 S.Ct. 592, 81 L.Ed. 789]. "Where an important public interest would be prejudiced," the reasons for denying injunctive relief "may be compelling." *Harrisonville v. W. S. Dickey Clay Mfg. Co.,* 289 U.S. 334, 338 [53 S.Ct. 602, 77 L.Ed. 1208]. 320 U.S. at 670, 64 S.Ct. at 273.

It was concluded that:

> The case is then governed by the principle that where the second cause of action between the parties is upon a different claim the prior judgment is *res judicata* not as to issues which might have been tendered but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Cromwell v. County of Sac,* 94 U.S. 351, 353 [24 L.Ed. 195]. And see *Russell v. Place,* 94 U.S. 606 [24 L.Ed. 214]. 320 U.S. at 671, 64 S.Ct. at 274.

The public interest in patents was also involved in *Sinclair & Carroll Co. v. Interchemical Corp.,* 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945), where the Court encouraged a full inquiry into patent validity, admonishing that:

> There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. *Irvin v. Buick Motor Co.,* 8 Cir., 88 F.2d 947, 951; *Aero Spark Plug Co. v. B. G. Corp.,* 2 Cir., 130 F.2d 290; *Franklin v. Masonite Corp.,* 2 Cir., 132 F.2d 800. It has come to be recognized, however, that of the two questions, validity has the greater public importance, *Cover v. Schwartz,* 2 Cir., 133 F.2d 541, and the District Court in this case followed

what will usually be the better practice by inquiring fully into the validity of this patent. 325 U.S. at 330, 65 S.Ct. at 1145.

See *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 229–31, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

These policies were applied further in *Lear, Inc. v. Adkins, supra,* where the Court abrogated the doctrine of licensee estoppel. The "federal policies" of *Lear* have been considered by this court with respect to royalties, see *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968 (6th Cir. 1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974); *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 465 F.2d 1253 (6th Cir. 1972); *Atlas Chemical Indus., Inc. v. Moraine Products,* 509 F.2d 1 (6th Cir. 1974). We have noted that "One of the primary goals in *Lear* was to 'unmuzzle' licensees so that an early adjudication of invalidity could inure to the public interest." *Atlas Chemical Indus., Inc. v. Moraine Products, supra,* 509 F.2d at 6. See *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).[2]

In the present case we are asked to extend *Lear* further and to follow the Seventh Circuit's decision in *Kraly v. National Distillers and Chemical Corp.,* 502 F.2d 1366 (7th Cir. 1974). In *Kraly,* 502 F.2d at 1369, the court applied the policies of *Lear* to consent decree adjudications of validity, concluding that:

> National Distillers, the licensee, is not estopped from challenging the validity of the patent, even though a prior consent decree incorporated an understanding not to challenge the validity of the patent. As Judge Stevens points out in *Business Forms,* [*Busi-*

---

**2.** In other circuits the *Lear* public policy considerations have found a wide range of application to traditional concepts of patent law. *See, e. g., Coastal Dynamics Corp. v. Symbolic Displays, Inc.,* 469 F.2d 79 (9th Cir. 1972) (assignor estopped doctrine); *Massillon-Cleve-*

*land-Akron Sign Co. v. Golden State Advertising Co.,* 444 F.2d 425, 427 (9th Cir.), *cert. denied,* 404 U.S. 873, 92 S.Ct. 100, 30 L.Ed.2d 117 (1971) (no-contest clauses in settlement agreements invalidated).

*ness Forms Finishing Service, Inc. v. Carson,* 7 Cir., 452 F.2d 70], "A contrary result could not be reconciled with 'the public interest in a judicial determination of the invalidity of a worthless patent.'" 452 F.2d at 75. The Seventh Circuit explicitly rejected the holding of the District Court in the present case, stating as follows:

We cannot agree with the *Schlegel* court that [*Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc.,* 489 F.2d 974 (7th Cir. 1973)] supports the proposition that "once a party enters a consent decree accepting the validity of a particular patent, that party is estopped from raising the validity issue in subsequent litigation regarding the same parties and the same patent." *Id.* at 653. While it is true that in *Ransburg* this court reasoned that "the *Lear* case did not signify that something called 'federal public policy on patents' could be used to undo the effects of a valid lawsuit settlement contract," *id.,* that reasoning was applied only to that portion of the settlement involving *past* infringement. 502 F.2d at 1369.

The Seventh Circuit has subsequently reaffirmed this holding in *Crane Co. v. Aeroquip Corp.,* 504 F.2d 1086, 1092 (7th Cir. 1974), stating that the "Defendant was within its rights to test validity after entering into the consent judgment of validity."

We respectfully disagree with the Seventh Circuit's interpretation of *Lear.* In so holding we are in agreement with the Second Circuit, see *Broadview Chemical Corp. v. Loctite Corp.,* 474 F.2d 1391, 1395 (2d Cir. 1973), and the Eighth Circuit, see *United States ex rel. Shell Oil Co. v. Barco Corp.,* 430 F.2d 998, 1001–02 (8th Cir. 1970). *See also Schnitger v. Canoga Electronics Corp.,* 462 F.2d 628 (9th Cir. 1972); *but see Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 739–40 (9th Cir. 1971).

In *Hirs v. Detroit Filter Corp.,* 424 F.2d 1040, 1041 (6th Cir. 1970), this court stated that a contempt proceeding following a fully litigated issue of infringement is not a "*de novo* inquiry as to infringement, since the earlier determination of the validity of the patent and all the defenses to a charge of infringement which are related thereto are res judicata . . . ." We are aware of no court which has entertained the suggestion that *Lear* abrogates the doctrine of res judicata after a fully litigated result. This would seem to be the logical extension of denying res judicata effect to a consent decree. This court has not recognized such a difference previously, see *Warner v. Tennessee Products Corp., supra,* 57 F.2d 642 (6th Cir.), *cert. denied,* 287 U.S. 632, 53 S.Ct. 83, 77 L.Ed. 548 (1932). Even though the degree of judicial involvement is different between a consent decree and a litigated result, we are not prepared to find that judicial involvement in a consent decree is so inconsequential as to justify different treatment. We stated in *Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co.,* 71 F.2d 850, 851–52 (6th Cir. 1934), as follows:

Were it permissible upon every proceeding in contempt to again challenge the validity of the claims, and to reopen issues already decided, such practice would be subversive, if not indeed wholly destructive, of the plenary power of the court to enforce its decrees, and to reopen questions of validity upon an appeal from a contempt order would be to invite all defeated litigants in patent infringement suits to defy injunctional orders, and by such defiance to seek review of adjudicated issues not otherwise open to them.

In *United States v. Swift & Co.,* 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932), Mr. Justice Cardozo said: "We reject the argument . . . that a decree entered upon consent is to be treated as a contract and not as a judicial act."

Looking to the rationale of *Lear,* we note that there is a significant difference between the effect of a consent decree and the doctrine of licensee estoppel.

The parties to the patent suit are entitled to a full and fair hearing on the merits of the case up until the time a consent decree is entered. The doctrine of licensee estoppel closed the doors of the courts to a large group of parties who had sufficient interest in the patent to challenge its validity. By giving res judicata effect to consent decrees, we do not close the doors of the courts to litigation on the issue of patent validity, except as to parties or their privies, and only after they have had the opportunity to litigate the issue fully. Third parties are not affected by the consent decree. See, e. g., Annot., 4 A.L.R.Fed. 214, 217 (1970); *Boutell v. Volk,* 449 F.2d 673, 675 (10th Cir. 1971).

The public interest requires that an invalid patent be stripped of its monopoly, and at as early a date as possible. When a consent decree is to be given res judicata effect, litigants are encouraged to litigate the issue of validity rather than foreclosing themselves by a consent decree. If they were given a second change to litigate the issue of validity, alleged infringers might well accept a license under a consent decree and forego an attack on validity until favored by a stronger financial position, or until threatened by other manufacturers who were not paying royalties. By giving res judicata effect to consent decrees this court protects the public interest in that an alleged infringer is deprived of a judicial device which could be used to postpone and delay a final adjudication of validity. See *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* 402 U.S. at 334–48, 91 S.Ct. 1434; *Lear, Inc. v. Adkins, supra,* 395 U.S. at 683, 89 S.Ct. 1902; *Troxel Mfg. Co. v. Schwinn Bicycle Co., supra,* 465 F.2d at 1257; *see also Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc.,* 489 F.2d 974, 978 (7th Cir. 1973).

We, therefore, hold that the District Court was correct in ruling that the doctrine of res judicata barred USM from reviving and relitigating the issue of the validity of the Horton patent.

### III. Contempt

The District Court held that USM has violated the permanent injunction issued by that court on February 22, 1972, and is in contempt. The permanent injunction was reaffirmed and ordered to be continued. USM was ordered to account for all profits derived from its sales of the contemptuous construction.

We conclude that the findings of infringement are not clearly erroneous and that these findings require affirmance of the decision on the issue of contempt.

This Court in a number of decisions has established clearly the applicable rule in proceedings for contempt for violation of an injunction against infringement of a patent.

In *Field Body Corp. v. Highland Body Mfg. Co.,* 13 F.2d 626, 627 (6th Cir. 1926), we held:

The relation of the Morrison patent to other structures and the validity of certain of its claims are argued by counsel for appellant as though the adjudication of validity and infringement were under review. We are not concerned with the prior art, nor with an original interpretation of the claims of the patent. It suffices here that in an action between the parties the patent was held infringed by appellant's original structure. The question, then, is whether the modified structure is the equivalent of the original in its relation to the patent in suit.

The Court further held:

The question is one of fact. (Id. at 627)

In *Wadsworth Elec. Mfg. Co. v. Westinghouse Elec. & Mfg. Co.,* 71 F.2d 850 (6th Cir. 1934), Judge Simons, who wrote the opinion for the Court, followed *Field Body* and stated:

The question in proceedings for contempt for violation of an injunction against infringement is not one which relates to or involves the original interpretation of the claims of the patent. *Field Body Corporation v. Highland Body Mfg. Co.,* 13 F.2d 626 (C.C. A.6). · It suffices that in an action be-

tween the parties the patent was held valid and infringed, and the question is only whether the modified structure is equivalent to the original in relation to the patent in suit. "The proceeding for its punishment (for contempt) 'is a new and distinct proceeding, and is quite independent of the equities of the case on which the decree is founded.' " *Bullock Electric & Mfg. Co. v. Westinghouse Electric & Mfg. Co.*, 129 F. 105, 106 (C.C.A.6). Were the rule otherwise, and were it permissible upon every proceeding in contempt to again challenge the validity of the claims, and to reopen issues already decided, such practice would be subversive, if not indeed wholly destructive, of the plenary power of the court to enforce its decrees, and to reopen questions of validity upon an appeal from a contempt order would be to invite all defeated litigants in patent infringement suits to defy injunctional orders, and by such defiance to seek review of adjudicated issues not otherwise open to them. We think it clear that the only issue presented by this appeal is whether the defendant's modified structures infringe the patent claims, and whether their manufacture violates the writ of injunction, and upon that issue neither the court below nor this court need consider the prior art. *Field Body Corporation v. Highland Body Manufacturing Company*, supra. (851–852)

In *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 338 F.Supp. 1240 (W.D.Mich. 1972), *aff'd*, 476 F.2d 1286 (6th Cir. 1973), the Court held:

The standard applied in contempt proceedings following an adjudication of patent validity and infringement is abundantly clear. In such proceedings the question is whether the accused structure is equivalent to the original in relation to the patent in suit. *Field Body Corporation v. Highland Body Mfg. Co.*, 13 F.2d 626 (6th Cir. 1926). *Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co.*, 71 F.2d 850 (6th Cir. 1934), certiorari denied *Wadsworth Electric Mfg. Co. v. Sachs*, 294 U.S. 724, 55 S.Ct. 552, 79 L.Ed. 1255. Thus, there are two focal points to the issue presently before the court: (1) the equivalency of the modified structures to the structures previously held infringing, and (2) the relationship of the new devices to the valid patent claim. *Hirs v. Detroit Filter Corp.*, 424 F.2d 1040, 1041 (6th Cir. 1960). (1241–1242)

In our opinion the District Court did not err in excluding evidence offered by USM which was designed as a collateral attack on the consent decree.

Reference is made to the District Court's findings of fact Nos. 22 through 38, reported at 381 F.Supp. at 652–53.

We have held consistently that the issue of infringement is factual and the findings of fact of the trier of the facts are governed by Rule 52(a), Fed.R. Civ.P. See, *e. g.*, *Olympic Fastening Systems, Inc. v. Textron, Inc.*, 504 F.2d 609, 619 (6th Cir. 1974); *Schnadig Corp. v. Gaines Mfg. Co.*, 494 F.2d 383, 389 (6th Cir. 1974); *Tappan Co. v. General Motors Corp.*, 380 F.2d 888, 891 (6th Cir. 1967); *United States Plywood Corp. v. General Plywood Co.*, 370 F.2d 500, 507 (6th Cir. 1966).

These authorities compel the sustaining of the factual findings of Judge Weinman, as they are supported by the overwhelming evidence in this case.

We reject the contention that the infringement provisions of the consent decree were vague. Paragraph 4 of the decree found infringement "by making and/or selling pile weatherstripping *having a flexible, impervious barrier in the pile* as represented by USM's Series 892 and 893 *and embodying the inventions disclosed and claimed therein.*" (Emphasis added).

The patent specifications describe the Horton weatherstrip as having a flexible, impervious barrier. It is also described in USM's Series 892 and 893.

The description of the barrier strip as shown in USM's Series 892 and 893 cer-

tainly does not make the infringement provisions vague, nor does it convert the consent degree into a meaningless gesture, which will be the result if USM's contentions are upheld.

The District Court found that USM's conduct was willful contempt, and we agree. This finding is likewise a factual finding and it should not be overturned because it is supported by substantial evidence and is not clearly erroneous. Rule 52(a) Fed.R.Civ.P.

In essence this appeal involves a very important principle, namely, whether sanctity should be accorded to a consent decree of a Federal Court in a patent-infringement case.

The importance of encouraging settlement of patent-infringement litigation, which all too frequently is complex, long-drawn-out, carried on through all the Courts, and even in different jurisdictions, cannot be overstated. If every patent-infringement case filed had to be tried the Courts would be clogged.

The problem is discussed in an excellent opinion written by District Judge Edward Weinfeld in *Wallace Clark & Co. Inc. v. Acheson Industries, Inc.*, 394 F.Supp. 393 (S.D.N.Y.1975).

We ought to do nothing here to make the settlement of a patent-infringement action by a consent decree a futile, meaningless gesture which will discourage such settlements in the future.

### IV. Validity of the Johnson Patent

By pre-trial order the District Court warned that "the validity of [the Johnson] patent on [the] modified form of weatherstripping may be placed in issue and adjudicated if that should be necessary to a full and proper decision in this case, and parties are hereby instructed to plan for the trial accordingly." 369 F.Supp. at 652. At trial USM asserted the Johnson patent as a defense to contempt. It was, therefore, in issue and the District Court was required to inquire fully into the relationship of the Johnson patent to the Horton patent. From this examination it became clear that Johnson was obvious and anticipated by the Horton patent. The Johnson patent was also held unenforceable and invalid because of misconduct before the Patent Office. 381 F.Supp. at 653.

We agree that the Johnson patent was in issue, that the court could reach the issue of validity, and that the court's conclusion as to validity under the provisions of 35 U.S.C. §§ 102 and 103 is correct.

We do not agree, however, with the holding of the District Court that the Johnson patent was unenforceable and invalid because of misconduct in the Patent Office. This holding was based on the Johnson patent's description of the Horton patent in the specification, where it is stated that in Horton "the barrier strip . . . [is] secured to the base . . . ." The Johnson disclosure does not inform the Patent Office that in the text of the Horton patent specification it is expressly stated that the barrier strip may be pressed into contact with the pile fibers "to cause more or less adherence of the fibers thereto . . . ." Although misrepresentation or an omission in proceedings before the Patent Office may constitute misconduct, see *Charles Pfizer & Co. v. F. T. C.*, 401 F.2d 574, 579 (6th Cir. 1968), the facts in the present case do not rise to that level. A full disclosure was made as to the prior art, *i. e.*, the Horton patent. No prior art was hidden. The Horton patent was not suppressed by USM nor was the citation to it casual. The Horton patent was discussed extensively as the most relevant art in this area of technology and was noted by the Patent Office as the first patent of record.

The judgment of the District Court is affirmed and the cause is remanded for an accounting and other relief to which the plaintiff may be entitled. Costs on this appeal are taxed against USM Corporation.

PHILLIPS, Chief Judge (concurring in part and dissenting in part).

I concur in parts I, II and IV of the majority opinion. I do not agree with

all of part III. I would remand the case to the District Court for further proceedings. Accordingly, I dissent from the decision to affirm.

It is respectfully submitted that the record does not contain sufficient evidence from which the consent decree can be construed to have the breadth attributed to it by the District Court and by the majority opinion. If the consent decree is given such a broad interpretation, the owner of the patent might receive a monopoly greater than granted by the Patent Office. This could raise a serious question of public policy.

I therefore, would remand with instructions, rather than affirming on the issue of contempt. This procedure would enable the District Court to make a proper determination of the meaning of the consent decree and a proper determination on the issue of infringement. It may be that the District Court on remand would reach the same ultimate conclusion on the issue of contempt. My proposed remand would permit the District Judge to accomplish this result by proper procedure rather than on findings which I submit to be inconsistent in some respects,[1] and on a consent decree whose meaning is not clear to me.

The District Court held in finding of fact No. 41 that the determination of contempt rested on the equivalency of the series 892 and 893 devices and the newly accused weatherstripping, without regard to the scope and content of the claims of the Horton patent. 381 F.Supp. at 653. It has long been ruled that "[t]he question, then, is whether the modified structure is the equivalent of the original in its relation to the patent in suit," *Field Body Corp. v. Highland Body Mfg. Co.*, 13 F.2d 626, 627 (6th Cir. 1926). However, this court has rejected the proposition that "the only proper test of whether there has been contempt of a patent injunction is whether the presently accused device is the equivalent of the device originally found to have infringed the patent." *Hirs v. Detroit Filter Corp.*, 424 F.2d 1040, 1041 (6th Cir. 1970). In that case we also held that "[w]here the injunction prohibits further infringement of the invention embodied in specific claims of specific patents, one of the issues presented to the District Court in a contempt action is whether the presently accused device infringes the patent claims" 424 F.2d at 1041. *See also, Wadsworth Electric Mfg. Co. v. Westinghouse Electric & Mfg. Co.*, 71 F.2d 850, 852 (6th Cir. 1934).

I have difficulty in determining the scope of the consent decree because its terms are vague as to the limits of the prohibited conduct. The decree states that USM has infringed the Horton patent "by making and/or selling pile weatherstripping having a flexible, im-

---

1. Finding No. 23, 381 F.Supp. at 652, states that the enjoined structure "used the same elements to accomplish the same purpose in the same way as the patented structure . . ." Finding No. 30 also repeats substantially the same test. These are the tests of infringement under the doctrine of equivalents. *See Acme Highway Products Corp. v. D. S. Brown Co.*, 473 F.2d 849, 850–51 (6th Cir. 1973). However, the District Court expressly disclaimed infringement under the doctrine of equivalents in Finding No. 40, 381 F.Supp. at 653, stating that "The doctrine of file wrapper estoppel is applicable only when the doctrine of equivalents is resorted to for proving infringement. . . . There is literal infringement here and no available file wrapper estoppel defense." Therefore, even if the District Judge may have believed that there was infringement under the doctrine of equivalents, he gave his findings a label of literal infringement.

Yet there are no specific findings of fact supporting an ultimate finding of literal infringement. Finding No. 25 negatives any inference of literal infringement in Finding No. 24. The nearest thing to a finding of literal infringement is expressed in Finding No. 26, where it is stated that "The Horton patent teaches that the barrier strip may be bonded to the base strip and to the pile fibers." With utmost deference, I submit that this statement is not relevant to the issue of infringement, but is relevant only to the issue of validity of the Johnson patent.

Further, I am impressed that the file wrapper estoppel defense is strong in this case and should have been considered. However, since the District Court expressly held that this defense is not available, I do not believe Finding No. 42 is decisive. Finding No. 42 may be close to a finding of file wrapper estoppel, but it is phrased in terms of "equitable estoppel."

pervious barrier in the pile as represented by USM's series 892 and 893 embodying the inventions disclosed and claimed [in the Horton patent]." The decree then proceeds to enjoin and restrain "the unauthorized making or using or selling or inducing others to use pile weatherstripping . . . as represented by USM's series 892 and 893." This language could be construed to have three distinct meanings: (1) It could be read to mean that USM is enjoined from making weatherstripping "constructed specifically according to" their old embodiments (This construction would provide a lesser degree of protection than that of the patent claims.); (2) it could be read to prohibit further infringement of the patent; and (3) it could be taken as a broad prohibition against all similar types of weatherstripping, irrespective of infringement.

The District Court refused to hear extrinsic evidence as to the meaning of the injunctive language, stating:

We are not going to put anything prior to [the decree] in this case. . . We start from the Entry that was agreed upon by you . . . . It was signed by me upon agreement of the parties. Now we start from there. I am not interested in anything prior to that time.

I would hold that under the particular circumstances of this case the District Court erred in refusing to consider the excluded evidence. It has been held that "A consent decree represents an agreement by the parties which the court cannot expand or contract," *Artvale, Inc. v. Rugby Fabrics Corp.*, 303 F.2d 283, 284 (2d Cir. 1962); *see United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971). I agree with the majority opinion as to the dangers of encroachment on the sanctity of consent decrees. However, in construing the meaning of the consent decree in the present case, the court may make reference to other material to ascertain the meaning of the ambiguous terms in the decree. The role of the court is not to "expand or contract" the decree, but to

determine what the parties intended when they chose the language in the decree. Evidence relating to the prior negotiations, the settlement agreement and the purchase agreement is therefore admissible for the narrow purpose of defining and delineating the meaning of the ambiguous injunctive portion of the decree. *Cf. Artvale, Inc. v. Rugby Fabrics Corp., supra*, 303 F.2d at 284.

I would remand the case to the District Court for further proceedings on that issue. On remand I would direct the District Court to consider the evidence previously rejected as to the meaning of the injunctive language in the consent decree.

If the decree should be found to prohibit the specific manufacture of weatherstripping "constructed specifically according to" series 892 and 893, then the court should determine if the accused weatherstripping is substantially identical to series 892 and 893. In making this determination the scope and content of the weatherstripping art would be relevant to determine what magnitude of departure from the design of the enjoined structure goes beyond the decree. For example, a change which superficially appears to be slight may be substantially different in view of the weatherstripping prior art.

If the consent decree should be found to prohibit further infringement of the Horton patent, I would direct the District Court first to determine if there is literal infringement by comparing the accused device to the Horton claims. If there is no literal infringement, the District Court should determine whether there is infringement under the doctrine of equivalents. On the issue of the doctrine of equivalents, the history of the prosecution of the Horton application before the Patent Office would be particularly relevant on the issue of whether certain claim limitations have created a file wrapper estoppel.

If the consent decree should be determined to be broader than any of the foregoing interpretations then the District Court should consider what conduct

is specifically prohibited by the injunction, and whether USM has violated the injunction by the manufacture of the accused device.

In the usual case a consent decree's prohibition, at most, will be coextensive with the protection afforded by the claims of the patent. Violation of the decree is to be determined by comparing the newly accused device with the patent claims according to the usual theories of infringement. I re-emphasize that a more expansive reading of the decree might operate to bestow upon a patentee a greater monopoly than he could obtain from the Patent Office.

If on remand the District Court should find that there has been a violation of the injunctive provisions of the consent decree, a determination then would be made as to whether the holder of the Johnson patent, which was presumed to be valid under 35 U.S.C. § 282, was entitled to rely upon it in good faith. If on remand the District Court should determine that there are any such factors of mitigation, then consideration could be given to the issuance of a supplemental injunction, rather than a contempt citation and accounting, as an appropriate remedy.